**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **(1) KATHLEEN LAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-cv-330-TCK-FHM** |
| | ) | **[District Court in and for Tulsa** |
| **(1) KAISER-FRANCIS OIL** | ) | **County, Oklahoma** |
| **COMPANY,** | ) | **Case No. CJ-2015-00876]** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**KAISER-FRANCIS OIL COMPANY'S MOTION FOR SUMMARY JUDGMENT ON**
**PLAINTIFF LAY'S ONLY CLAIM:**
**DISPARATE TREATMENT AND TERMINATION**
**IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**

## TABLE OF CONTENTS

<u>**UNDISPUTED STATEMENT OF MATERIAL FACTS**</u>…………………………………………1

    Entities, Personnel and Positions……………………………………………..…………1

    Lay's Work Performance Issues……………………………………………………...…..2

    2008 Verbal Warning……………………………………………………………………2

    Continued Work Performance Issues……………………………………………………3

    2012 Overpayment………………………………………………………………………5

    Continued Work Performance Issues……………………………………………………5

    Late Summer/Fall 2013 Probation in Lieu of Termination………………………………6

    December 2013 Overpayment……………………………………………………………7

    Change of Districts to Eliminate Errors………………………………………….……..8

    The Pauline 3-16 Error……………………………………………………………..……9

    The Silo SWD Well Revenue Errors……………………………………………………10

    The Huddle Well Errors…………………………………………………………………11

    Termination………………………………………………………………………………12

    Lay Has No Knowledge of Alleged Comparators and/or Comparative Acts……………12

    Turnbull Employment Was Employed Before Lay's Termination………………………13

    Lack of Pretext……………………………………………………………….…………14

    Lay's Replacement – Female Over Forty………………………………………………15


<u>**ARGUMENT AND AUTHORITIES**</u>…………………………………………………………15

    The Applicable Summary Judgment Standards…………………………………………16

    Application of the Law to the Facts………………………………………………....…18

    1.     Lay Has Failed to Establish a Prima Facie Case of Age Discrimination…....……18

    2.     KOFC Had a Legitimate Business Reason to Terminate Lay……………...……20

    3.     Lay Cannot Establish Pretext……………………………………………………21


<u>**CONCLUSION AND PRAYER FOR RELIEF**</u>……………………………………………23

## TABLE OF AUTHORITIES

Cases

*Barnes v. Occidental Petroleum Corp.,*
  761 F.Supp.2d 1285 (N.D. OK 2010) ................................................................. . 20

*Braun v. St. Pius Parish,*
  509 Fed. Appx. 750 (10th Cir. 2013) .................................................................. 22

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ........................................................................................... 16

*Cone v. Longmont United Hosp. Ass'n,*
  14 F.3d 526 (10th Cir.1994).............................................................................. 23

*Doyle v. Nordam Grp., Inc.,*
  2010 WL 5141274................................................................................ 15, 18, 20

*Doyle v. The Nordam Grp., Inc.,*
  492 Fed.Appx. 846, (10th Cir. 2012) .................................... 15, 17, 18, 20

*Glenn v. City of Tulsa,*
  2013 WL 1398991 (N.D. Okla. April 5, 2015) ......................................... 19

*Gross v. FBL Fin. Servs., Inc.,*
  557 U.S. 167 (2009) ........................................................................................... 16

*Hutchins v. Cessna Aircraft Co.,*
  589 Fed. Appx 874 (10th Cir. 2014) ...................................................... 22

*Konzak v. Wells Fargo Bank, NA.,*
  2012 WL 3104872 (10th Cir.)............................................................. 18, 20, 22

*Lewis v. Twenty-First Century Bean Processing,*
  2016 WL 66334 (1st Cir. January 6, 2016)............................................ 19

*McDonnell Douglas Corp.,*
  411 U.S.............................................................................................. 16, 17, 22

*Metzler v. Federal Home Loan Bank of Topeka,*
  464 F.3d 1164 (10th Cir. 2006)........................................................... 15

*Montes v. Vail Clinic, Inc.,*
  497 F.3d 1160 (10th Cir. 2007)........................................................... 20

*Reeves v. Sanderson Plumbing Prods., Inc.,*
  530 U.S. 133 (2000) ........................................................................................... 16

*Riggs v. AirTran Airways, Inc.,*
  497 F.3d 1108 (10th Cir. 2007)........................................................... 16

*Rivera v. City & Cnty. of Denver,*
  365 F.3d 912 (10th Cir. 2004)............................................................. 17

*Roberts v. IBM Corp.,*
  733 F.3d 1306 (10th Cir. 2012)........................................................... 17

*Roberts v. Int'l Bus. Machines Corp.,*
  2012 WL 4052515......................................................................... 17, 18

*Selenke v. Medical Imaging of,*
  248 F.3d 1249 (10th Cir., 2001) ......................................................... 20

*Stone v. Autoliv ASP, Inc.,*
  210 F.3d 1132 (10th Cir.2000)............................................................ 23

*Thomas v. Berry Plastics Corp.,*
   803 F.3d 510, Fn. 8 (10th Cir. 2015)..........................................................................18

*Wheeler v. Spirit Aerosystems,*
   2015 WL 161292 (N.D. Okla. Jan. 20, 2015) ...........................................................20

*Zamora v. Elite Logistics, Inc.,*
   449 F.3d 1106 (10th Cir. 2006)..................................................................................16

Zoutomou v. Copper,
   550 Fed. Appx. 647 (10th Cir. 2013) .........................................................................18

Statutes

29 U.S.C. § 623(a)(1)........................................................................................................16

Rules

Fed. R. Civ. P. 56(c) .........................................................................................................16

Fed. R. Civ. P. 56(e) .........................................................................................................16

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Kaiser-Francis Oil Company (hereinafter "KFOC"), hereby moves this Court to grant summary adjudication in its favor with respect to Plaintiff's only claim, Violation of the Age Discrimination in Employment Act ("ADEA"), by Plaintiff, Kathleen Marron Lay ("Lay" or "Plaintiff").   The Motion should be granted for four separate and independent reasons:

1. Plaintiff Lay was not satisfactorily performing her work; therefore Plaintiff failed to establish a prima facie case of alleged discrimination;

2. Plaintiff Lay cannot show that Defendant treated persons outside each respective protected class more favorably than Plaintiff; therefore Plaintiff failed to establish a prima facie case of alleged discrimination;

3. Defendant KFOC had a legitimate business reason for terminating Plaintiff Lay for Lay's employment because Lay's failed to adequately perform Lay's job duties;

4. Plaintiff Lay cannot establish pretext for KFOC's termination of Lay's employment.

## UNDISPUTED STATEMENT OF MATERIAL FACTS

The following material facts are undisputed and entitle KFOC to summary adjudication as requested in this Motion.

### Entities, Personnel and Positions

(1)   KFOC is a Tulsa based oil and gas exploration and production company.

(2)   David Cox is the Joint Interest Manager for KFOC. Cox was fifty-nine years old as of the date Cox terminated the employment of Lay.   Ex. 1 (Lay at 30); Ex 2 (Affidavit of Cox).

(3)   According to Lay, Cox was approximately 50 when Lay first met Cox in 2007.   Ex. 1 (Lay at 30).

(4)   Cox interviewed and agreed to hire Lay.   Ex. 1 (Lay at 54-55).   Cox never mentioned retirement to Lay while Lay was employed at KFOC.   Ex. 1 (Lay at 79).

(5)     KFOC (Cox) hired Lay as an accountant for the joint interest billing department.  Ex. 1 (Lay at 29, 54-55).

(6)     Lay worked under the direct management of David Cox.   Ex. 1 (Lay at 73); Facts at ¶¶ 1-53.

(7)     John Vinson[1] is the controller for KFOC.  Ex. 2 (Affidavit of Cox).

(8)     According to Lay, Vinson was in his sixties upon Lay's hire date in 2007. Ex. 1 (Lay at 29).

### Lay's Work Performance Issues

(9)     KFOC had in place a set of Policies and Procedures with respect to which Lay was obligated to comply. Ex. 3 (Excerpted Policies and Procedures at KFOC-000005 (General Statement); KFOC-000020 (Courtesy); KFOC-000024 to KFOC-000026 (Improper Conduct).

(10)     Lay admitted at deposition that Lay's allegation that Lay was never formally disciplined prior to her termination as claimed in Paragraph 10 of the Complaint (Petition in State Court) [Doc. 002-001] is false.   Ex. 1 (Lay at 89, 90).

(11)     As a joint interest billing accountant, Lay handled the El Reno district from the time of Lay's hire through January 15, 2014. Ex. 1 (Lay at 13-14); Ex. 4 (2014-01-15 Email at KFOC-000155).

(12)     KFOC reviewed Lay's accounting and coding work for accuracy and conduct in the normal course of business.   (Facts at ¶¶ 13 through 53).

### 2008 Verbal Warning

(13)     On January 14, 2008, KFOC issued a verbal warning to Lay for insubordination and discourtesy.

---

[1] John Vinson's last name was misspelled as Vincent in the deposition of Lay.   Ex. 1.

(14)    The text of the January 14, 2008 verbal warning reads as follows:

I asked you to follow procedure and copy the original page of a JE after you had made a correction notation on it before attaching it as backup to a current JE you submitted for my approval, you stated that I "should have known you had made a correcting notation on the original JE, by virtue of the fact that you had written, in ink, a correcting note on the copy of the backup you attached to the new JE. You also referred to this requirement (of writing on the original JE, then copying it) as "my opinion, during this discussion, you also stated that you were "giving it as good as I get" (the 'T' referring to yourself). I have therefore summarized these points, along with my expectations of future compliance with my instructions, in this undocumented verbal warning.

1.) **Insubordination-** No future instances of insubordination on your part will be tolerated. Any future such instances will immediately be subject to further, and harsher, disciplinary proceedings. Your email to me of this date asked forgiveness for your "flippant, response, and stated "maybe you weren't in the mood,. My "mood" is irrelevant to my expectations of you following procedure in the future, and doing so in a non-threatening and non-argumentative manner.

2.) **Discourtesy-** I found your response to my legitimate request this morning to be quite discourteous. I will treat you courteously in the future (as I have in the past) and expect the same from you.

### Continued Work Performance Issues

(15)    Lay failed to enter July charges on the Linn account until September of 2008.   Ex. 5

(2008-09-25 Lay email at KFOC-000113) (admitting: "I have no excuse for why I waited until

September to enter July charges.").

(16)    Lay inaccurately entered charges on the Linn account in November of 2008.   Ex. 6

(2014-11-24 09:27 Email at KFOC-000114)(admitting to a "brain cramp").

(17)    In 2009, Lay had to make overhead adjustments on journal entries.   Cox noted:

We've both spent far too much time on what is essentially a very basic JE, and you're still faced with lots of corrections to make for prior months' JEs that were calculated incorrectly. Although I am tasked with the responsibility of reviewing/approving all JEs submitted by the Joint Interest group each month, the primary responsibility for ensuring the accuracy of same falls on the person who generates the JE- you, in this instance. I'll get lucky and catch an error every now and then, but I can't (and won't) catch them all- so you shouldn't be relying on me

to do so on this or any other JE you submit.

You'd mentioned yesterday that you copied the June JE over to July's business-that F7 "Copy" function in the online JE system is a marvelous thing, and I use it myself, but none of us should be relying on it too much. Even though you think a JE is routine from month-to-month, you should never assume so and should review the logic behind each JE you input each month. In the case of this specific JE, you know the underlying figures will change twice a year- once every January when the Kansas rates change, and again each April when the overhead rates are escalated. You should therefore put a note in your calendar (or wherever you'll see it) to review/adjust this JE at least those two times per year. In addition, this JE needs to be reviewed each month to ensure the active well counts are accurate on each lease.

Ex. 7 (2009-08-06 Email at KFOC-0000112 from Cox to Lay).

(18)     In January of 2010, Lay again admitted to accounting processing errors, responding: "I goofed".     Cox, Joint Interest Billing Manager responded that: "'I goofed' is not an excuse. You're capable of, and I expected, better compliance with my specific requests and instructions." Ex. 8 (2009-12-31 to 2010-01-01 Email Chain at KFOC-000115).

(19)     In late 2010, KFOC employee Chris Jones (Accounts Payable Manager Prior to Penny Jarman) reported to Cox that Plaintiff Lay had been discourteous to other employees:

Hate this for us both. Kathleen [Lay] blew up in Jennifer's cube, was asked to leave, would not. Jennifer was/is trying to close for the week, did not initiate nor try to participate in the confrontation. The words were strong enough that Shirley left the area. Please instruct Kathleen to no longer speak with Jennifer and to direct her work and non-work questions to you or another person in your group. I would prefer you relocate Kathleen to another cube away from AP staff.

Ex. 9 (2010-12-07 02:00 p.m. at KFOC-000118 Email from Jones to Cox re [Lay] blowup); Ex. 1 (Lay at 100-101).

(20)     Cox reminded Lay that by delaying inputting JE's (journal entries) each month, it puts an unnecessary burden on other employees (in this case Webb, a fellow joint interest accountant at Defendant KFOC) and delays [Defendant's] monthly JE close on days when the Defendant faced circumstances beyond its control.   Ex. 10 (2011-12-19 Email at KFOC-000121); Ex. 1 (Lay at

31 (noting position of Shirley Webb as joint interest)).

## 2012 Overpayment

(21)    In 2012, Lay input a full balance instead of the current balance to be paid.   Lay notified Cox and apologized for the error.   Cox coached Lay stating: "Luckily this particular overpayment was sent to an honest vendor." Ex. 11 (2012-08-16 Email Chain at KFOC-000124).

## Continued Work Performance Issues

(22)    Later in 2012, Lay sent the entire El Reno status report to Linn Energy rather than the appropriate invoice.   Cox coached Lay as follows:

> You attached the wrong Excel file- you attached the entire El Reno status report (as it says in the file name). Redo this email and resend. And note that all the things like this, and the error in the Linn overhead schedule; and all the corrections that had to be made on the workover overhead calculations that i catch and point out to you are not me being picky- they're simply wrong, and can and should be caught by you. You rush through your work too fast and need to slow down and review everything more closely than is occurring now. That would have the added benefit of saving us both a lot of time- you by not having to do everything multiple times, and me not having to review all you do.

Ex. 12 (2012-09-20 Email Chain at KFOC-000125).

(23)    Cox continued to coach Lay regarding Lay inputting wrong communications into the system which caused additional work for others (in this case Shirley Webb).   Ex. 13 (2013-03-14 Email Chain at KFOC-000126 to KFOC-000127).

(24)    In April of 2013, an outside vendor, Farnsworth Services, notified KFOC that KFOC had paid invoices that were not related to Farnsworth Services in addition to invoices that were Farnsworth invoices.   Penny Jarman (KFOC's Accounts Payable Manager), notified Lay: "Apparently you overpaid Farnsworth Services by $14,469.88 that should have went to Ferguson Beauregard, please make the needed corrections".   Lay acknowledged the error: "Yes. I definitely need to add another step and stop rushing to balance. Mia culpa."  Ex. 14 (2014-03-23

to 2013-05-07 Email Chain at KFOC-00130).

(25)    In June of 2013, Jarman (KFOC's Accounts Payable Manager) copied Cox on an email

chain between Jarman and Lay regarding a fifth incorrect payment to a particular vendor,

Applied Industrial Machining, due to Lay's errors.    Jarman stated to Lay:

> Kathleen,
> The invoices I gave you to reverse last week are not in the system for the close today. I have had Jennifer void the check and it is going to set back up to pay again if the credits are not input. This is the fifth time you have paid this vendor incorrectly and if the check cuts again it will be six.

Ex. 15 (2013-06-18 Email Chain at KFOC-000132 to KFOC-000133.   *See,* in particular,

2013-06-18 02:36 p.m. email at KFOC-000133 from Jarman to Lay).

### Late Summer/Fall 2013 Probation in Lieu of Termination

(26)    As of July 9, 2013, Cox recommended termination of the employment of Lay noting:   "It

has become apparent that she is either incapable or unwilling to change the following attributes

that make her an undesirable employee": (1) Insolent/combative attitude; (2) lack of

organizational skills, (3) lack of catching her own errors, some of which are material (e.g. paying

wrong vendors); and (4) inability to work productively with others; discourteous to other

employees. Ex. 16 (2013-07-19 Reasons for Termination at KFOC-000134).

(27)    However, in lieu of termination, on August 1, 2013, Cox outlined for Lay concerns

regarding Lay's job performance and expectations going forward.

> You are hereby notified that effective immediately you are being placed on a ninety (90) calendar day probationary period. You will be expected to comply with the instructions provided to you in this letter, as well as any future instructions regarding your work performance. Your failure or refusal to comply with these instructions or my expectations regarding your job performance or behavior will likely result in termination of your employment. You will be expected to maintain an acceptable level of work performance and positively interact with me and others, not only during this probationary period but also for the remainder of your employment with Kaiser-Francis Management Company.

Ex. 17 (2013-08-01 Probation Memo to Lay at KFOC-000135 to KFOC-000136).

(28)   Lay refused to acknowledge receipt of the August 1, 2013 Probation Memo to Lay.   Ex.

17 (2013-08-01 Probation Memo to Lay at KFOC-000135 to KFOC-000136).

(29)   On October 29, 2013, Cox notified Defendant's Human Resources personnel (Mayberry):

> For your records, today marks the end of Kathleen's 90 calendar day probationary
> period. I advised her of this yesterday, and also told her that she's done a great job
> during the probationary period in meeting my expectations for her job
> performance. I advised her to just continue doing as she's done during the
> probationary period. She expressed her gratitude to have successfully completed
> that probation.

Ex. 18 (2013-10-29 1007 Email of Cox at KFOC-000151).[2]

## December 2013 Overpayment

(30)   On December 10, 2013, Cox was notified of an overpayment by Lay.   Ex. 19 (2013-12-

10 to 2013-12-11 Email Chain at KFOC-000152 at Email dated December 10, 2013 at 11:12

a.m. from Jennifer Arnold).

(31)   Lay admitted the overpayment and explained to Cox:  Bjork submitted invoice #37996 on

10/07, approved by Wayne Fields, for $10,675. That invoice included a previous amount paid on

invoice 37832 in the amount of $3185 on November 1st. I put the two invoices in your basket for

your review. Ex. 19 (2013-12-10 to 2013-12-11 Email Chain at KFOC-000152 at Email dated

December 10, 2013 at 03:51 p.m. from Lay to Cox).

(32)   Cox noted:

> Discussed this with Kathleen at 9:35 A.M. today;  pointed out to her that she
> should never pay total balances due on any invoice when it clearly includes an

---

[2] That Plaintiff Lay performed satisfactorily while on probation, does not establish evidence of
pretext when the employee was later terminated.   *See, Roberts v. IBM Corp.,* 733 F.3d 1306,
1309 (10th Cir. 2012) (After all, the quality of the employee's job performance is itself capable of
change and an employer isn't prohibited from acting on honestly held beliefs about those
changes."

amount labeled "Previous balance". Also pointed out to her that we have no A/P edits to catch overpayments like this; it's the responsibility of the person inputting the invoices (in this case her) to not overpay. Also reminded her we can't rely on the honesty of our outside vendors to catch our overpayments. She agreed and didn't protest too much.

Ex. 19 (2013-12-10 to 2013-12-11 Email Chain at KFOC-000152 at Email dated December 11, 2013 at 09:40 a.m. from Cox to Cox).

(33)    Lay again admitted the overpayment error:

Per our meeting this am, I appreciate the reminder and want to assure you that going forward, I will take extra care not [to] pay, (especially on attorney and URS invoices; it is a very popular practice with them,) any previously billed amounts listed on invoices.

Ex. 20 (2013-12-10 to 2013-12-11 Email Chain at KFOC-000153 at Email dated December 11, 2013 at 09:46 a.m. from Lay to Cox.)

*Failure to Process Invoices*

(34)    On December 31, 2013, Courtney Coulter emailed Cox and complained about Lay's performance as follows:

I am finding that once we send invoices via interoffice mail, to Kathleen [Lay] specifically, that I cannot account for each invoice and we will inevitably get calls and emails from the vendors asking about their invoices that we processed (often) weeks earlier. Tracking down these invoices a second time and sometimes having to reprocess them slows us down. We don't want to see vendors withhold their product or services for lack of timely payments. Much of our projects are on a tight timeline to begin with and even a small invoice issue could change our completion dates.

Ex. 21 (2014-01-02 Cox Email to Lay Requesting Comments at KFOC-000154).

## Change of Districts to Eliminate Errors

(35)    The El Reno district was more complex than the Perryton district.   Ex. 1 (Lay at 33-34).

(36)    There were less wells in the Perryton district than the El Reno district. Ex. 1 (Lay at 33-

34).

(37)   As of January 15, 2014, in light of Lay's errors and the complaints from other personnel regarding the errors, Cox swapped district responsibilities for Lay and Turnbull.  Facts at ¶¶ 13-33; Ex. 4 (2014-01-15 0925 Email Chain at KFOC-000155); Ex. 2 (Affidavit of Cox).

(38)   Lay took over the less complex Perryton district previously handled by Turnbull. Turnbull took over the more complex El Reno District previously handled by Lay.  Ex. 1 (Lay at 33-34, 135); Ex. 2 (Affidavit of Cox); Ex. 4 (2014-01-15 0925 Email Chain at KFOC-000155).

(39)   Cox noted that there would be ongoing training for both Lay and Turnbull regarding new district responsibilities.   Ex. 22 (2014-01-15 1036 Email Chain at KFOC-000156).

### The Pauline 3-16 Error

(40)   As of April 10, 2014, Helverston was reviewing the Pauline 3-16 Well for a bank report and questioned questioning why revenues are being charged to account "sub 31" while expenses are still going to account "sub 01".  Ex. 23 (2014-05-10 Email Chain at KFOC-000171).

(41)   As of April 10, 2014, Cox, in turn, inquired of Turnbull and Chapman why revenues were being charged to [code] sub 31 while expenses were still going to [code] sub 01.   Ex. 23 (2014-05-10 Email Chain at KFOC-000171).

(42)   Cox asked Lay whose responsibility it was to change default lease to account "sub 31" and being coding all expenses to that account [sub 31] at the time of the payout.  Ex. 24 (April 10, 2014 3:02 PM Email Chain at 02: 46 p.m. at KFOC-000157 to KFOC-000170).

(43)   Lay admitted that it had been Lay's responsibility to change the default lease to sub 31. Ex. 24 (April10, 2014 3:02 PM Email Chain at 02: 46 p.m. at KFOC-000157 to KFOC-000170).

(44)   Cox, in turn, notified Helverston that "this was our oversight in accounting".  Ex. 23 (2014-04-10 Email at KFOC-000171).

(45)    On April 10, 2014, Cox prepared an email to himself summarizing Lay's recent errors as

follows:

> Kathleen failed to set up sub 31, the APO sub, when the Pauline 3-16 well paid
> out in 4/13. She then had to move all expenses from 5/13 thru 2/14 from sub 01 to
> sub 31 on this JE. She first submitted this JE to me on Wednesday, 4/16 but it
> contained so many errors that it took her until the following day to correct them
> all and reprint the JE. Errors included: 1.) copying the sub 011ease number on an
> entire page when the charges should have gone to the new sub 31 number; 2.)
> failed to compare monthly totals of each month's JIB with her JE monthly totals
> so she missed some entries; 3.) when she corrected no. 2 that changed the total
> amount of the JE, but she only reprinted the two pages she corrected- thus the
> wrong JE total (which Shirley uses to balance all JEs) appeared on all the rest of
> the JE pages, including the first page which Shirley relies upon; 4.) she failed to
> attach any documentation or explanation as to why she made this JE or why it was
> necessary (I attached the printed emails to this JE before turning it in to Shirley).
>
> All of these errors are simple in nature for anyone who's been here as long as
> Kathleen to catch and are simply further evidence of her lack of attention to detail
> and failure to review her work. She's capable of catching and correcting her own
> errors; she simply fails to do so.

Ex. 25 (2014-04-25 1420 Email Cox to Cox at KFOC-000174).

## The Silo SWD Well Revenue Errors

(46)    By April 15, 2014, Ben Hurley checked 3 disposal wells in the Silo field and noted that

none of them [the wells] [were] showing any revenue.   Hurley inquired of Cox and Turnbull:

> The disposal fees being charged to the producing wells monthly should be
> credited to these wells as revenue, but that does not appear to be happening.
> Please review and advise your thoughts. Thanks.

Ex. 26 (2014-04-15 to 2014-04-25 Email Chain at 2014-04-15 11:18 am. Email at

KFOC-000180).

(47)    On April 17, 2014, Lay noted that she was researching the issue and "it goes back to Jan.

2013" when Lay was responsible for the Silo wells.   Ex. 26 (2014-04-15 to 2014-04-25 Email

Chain at 2014-04-17 03:09 p.m. email at KFOC-000178); Ex. 2 (Affidavit of Cox).

(48)    By April 25, 2014, after the issue was reviewed by Hurley and Ray, Cox noted:

This is another problem Kathleen created- Ben H.'s office has been submitting detailed spreadsheet info to her since January 2013 on how to pay SWD charges to lease owners and charge the appropriate wells; she failed to follow their simple instructions. Ben caught this and was upset that he went over all this with her and she still got it wrong.

Ex. 26 (2015-04-15 to 2014-02-25 Email Chain at KFOC-000178 to KFOC-000179 2014-04-25 02:39 p.m. Email Cox to Cox at KFOC-000178).

**The Huddle Well Errors**

(49)    On May 7, 2014, Jeanie Spradlin raised an issue with the Huddle 2-23 well due to the question raised by a working interest owner (WIO).    Spradlin noted that the working interest owner (WIO) was still being billed for overhead (OH) and a pumper.    Ex. 27 (Email Chain dated 2014-05-07 to 2014-05-08 KFOC-000181 to KFOC-000182 at 2014-05-07 Email at KFOC-000182)).

(50)    Ultimately, Cox asked Turnbull about the Huddle Well.   Turnbull noted that the Huddle was TA'ed (temporarily abandoned) on December 13, 2013 according to the  WSR (well shut-in report).  Ex. 27 (Email Chain dated 2014-05-07 to 2014-05-08 KFOC-000181 to KFOC-000182 at 2014-05-07 03:32 p.m. Email at KFOC-000181)).

(51)    Cox asked Turnbull and Lay, who was responsible for the well as of December 13, 2013, why the normal producing related charges were not dropped.    Ex. 27 (Email Chain dated 2014-05-07 to 2014-05-08 KFOC-000181 to KFOC-000182 at 2014-05-07 03:34 p.m. Email at KFOC-000181)).

(52)    On May 8, 2014, Lay admitted that charges were not deleted from Forvus (a software program).  Ex. 27 ((Email Chain dated 2014-05-07 to 2014-05-08 KFOC-000181 to KFOC-000182 at 2014-05-08 Email 07:29 a.m. at KFOC-000181).

(53)    By May 8, 2014, Cox requested that Kathleen "please reverse all producing-related standard charges billed to this lease from 1/14 thru 3/14". Ex. 27 ((Email Chain dated 2014-05-07 to 2014-05-08 KFOC-000181 to KFOC-000182 at 2014-05-08 Email 08:57 a.m. at KFOC-000181).

## Termination

(54)    On May 9, 2014, KFOC (Cox in the presence of Opfer of Human Resources) terminated the employment of Lay for unsatisfactory work performance as noted by Cox, other departments, working interest owners, and vendors.   Ex. 2 (Affidavit of Cox); Facts at ¶¶ 1-53.

## Lay Has No Knowledge of Alleged Comparators and/or Comparative Acts

(55)    Lay admitted at deposition that Lay's allegation, at Paragraph 20 of the Complaint [Doc 002-001], that Plaintiff experienced disparate treatment compared to co-workers [in the plural sense] under the age of forty (40), was false.  Ex. 1 (Lay at 90-91).

(56)    Lay alleged only that Chance Turnbull received different treatment than Lay.   Ex. 1 (Lay at 42-43).

(57)    Lay alleged only that Lay was not offered a future like Turnbull was.   Ex. 1 (Lay at 43-44).

(58)    Lay's allegations are based upon the fact that Lay claims that Turnbull (not Vinson), said "Wouldn't it be exciting if I [Turnbull] [were] your boss?"  Ex. 1 (Lay at 144).

(59)    Lay has no personal knowledge that Turnbull was offered a better future at KFOC. Ex. 1 (Lay at 44-45).

(60)    Lay has no personal knowledge of Turnbull's current position with KFOC.   Ex. 1 (Lay at 46).

(61)    Lay has no personal knowledge of succession planning for Cox's position at KFOC.   Ex. 1 (Lay at 47).

**Turnbull Employment Was Employed Before Lay's Termination**

(62)    On April 8, 2012, Chance Turnbull ("Turnbull") transmitted a copy of his resume to KFOC.  Ex 28 (2012-04-08 at KFOC-000856, KFOC-000852 to KFOC-000854).   On April 19, 2012, Turnbull applied for a revenue accounting position with KFOC. Ex 29 (Turnbull Application at KFOC-000857 to KFOC-000859).   On May 14, 2012 Turnbull was hired by KFOC as a revenue accounting clerk.  As a revenue accounting clerk, Turnbull reported to Brad Scott.  Ex. 30 (New Employee Profile at KFOC-000862).

(63)    On November 1, 2012, Turnbull became an ownership accountant.   As an ownership accountant, Turnbull reported to Karen Polson.   Ex. 31 (Payroll Authorization Form at KFOC - 000867).

(64)    In 2013, KFOC had an open joint interest accountant position which would report to David Cox.   Ex. 32 (2013-05-30 Email of David Cox noting receipt by Cox of 15 resumes for outside applicants and 1 internal applicant, Turnbull at KFOC-000870 to KFOC-000871).

(65)    On or about May 30, 2013, David Cox offered a position in joint interest billing to Chance Turnbull.  Turnbull accepted the joint interest billing position and became a joint interest billing accountant as of June 19, 2013.  Ex. 33 (2013-05-30 Email at KFOC-000872).

(66)    As a joint interest billing accountant, Turnbull reported to Cox and was a co-worker of Lay as of June 19, 2013 (almost a year prior to the termination of Lay's employment on May 9, 2014). Ex. 33 (2013-05-30 Email at KFOC-000872).

(67)    As set forth above, Cox has not retired and has no present plans for Cox to retire. Turnbull has not been promoted to Cox's position as joint interest billing manager.   Ex. 2 (Affidavit of Cox).

### Lack of Pretext

(68)    Lay admitted at her deposition that neither Cox, nor Vinson, nor Turnbull told age inappropriate jokes while at Kaiser-Francis, particularly noting that "We were all busy.    We didn't joke." Ex. 1 (Lay at 26).

(69)    Lay admitted at her deposition that Lay could not recall anybody making any age inappropriate comments to Lay directly.  Ex. 1 (Lay at 26).

(70)    Lay admitted at her deposition that Cox and Cox's direct reports of Cox were generally older than forty and were still working at KFOC when Lay's employment was terminated.  Ex. 1 (Lay at 30-32, 41-42, 47-48, 54).

(71)    In the Complaint, Lay alleged that Turnbull stated to Lay that Vinson has said that KFOC "needed a younger staff", not that Lay heard the statement directly from Vinson. [Doc. 002-001] (Complaint at Paragraph 12).   However, at her deposition, Lay, changed course and alleged that Lay directly heard John Vinson state two or three times during the course of Lay's seven year employment that "We need to get a younger staff".  Ex. 1 (Lay at 26-27, 145).

(72)    Lay herself explained alleged Vinson's alleged comments in Paragraph 71 in context as follows: "Because everybody there's old.  Well.   Seriously.  I mean, I was there for seven years, and there were still people there that had been there 20 plus years.    You know, so I was – no matter – I mean, I was the baby, I guess, for lack of a better word.  And we were all, I guess – I don't what the retirement age is now."  Ex. 1 (Lay at 145).

(73)    Lay could not even identify the year in which Vinson allegedly made the statement in

Paragraph 68.  Ex. 1 (Lay at 146-147).

(74)   Lay stated that Vinson was in his 60's when Lay met him.   Ex. 1 (Lay at 145).

(75)   Lay cannot establish that Vinson, rather than Cox, made the decision to terminate Lay.[3]

### Lay's Replacement – Female Over Forty

(76)   Toni Wright was born in 1971 and was forty-three (43) when KFOC hired Wright to fill the joint interest billing accountant position left vacant by the termination of Plaintiff Lay. Ex. 34 (Wright Excerpts from Personnel File); Ex. 1 (Lay at 86).

### ARGUMENT AND AUTHORITIES

These facts establish that there is no material fact in dispute and that Defendant KFOC is entitled to summary judgment on the three independents grounds:  (i) Lay's failure to establish a prima facie case; (ii) the existence of a legitimate business reason for Lay's termination; and (iii) the lack of evidence of pretext surrounding the reason why Lay was terminated. Lay's only Claim, Age Discrimination, is subject to the "but-for" standard of discrimination for ADEA cases.

### The Applicable Summary Judgment Standards

This Court outlined the governing rules for determining this motion for partial summary adjudication in the ADEA case in the case of *Doyle v. Nordam Grp., Inc.*, 2010 WL 5141274, (N.D. OK Case No. 09-CV-531-TCK-FHM Opinion and Order dated December 31, 2010); affirmed on appeal in *Doyle v. The Nordam Grp., Inc.,* 492 Fed.Appx. 846, (10th Cir. 2012) (Case No. 11-5004 Order and Judgment dated July 11, 2012).

Summary judgment is proper only if "there is no genuine issue as to any material

---

[3] *See, Metzler v. Federal Home Loan Bank of Topeka,* 464 F.3d 1164,1178-1179 (10th Cir. 2006) (affirming summary judgment for the employer in an FMLA case, wherein the Court noted that the actual decision to terminate the employee was made by someone other than the person the employee claims to be the basis for the discrimination claim).

fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.,* 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. Id. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-33 (1986).

Under these standards, KFOC has met its burden in establishing as a matter of law each of the separate grounds entitling KFOC to the requested summary adjudication.

## THE APPLICABLE DISCRIMINATION LAW

As well stated by the Tenth Circuit (affirming this Court):

The ADEA makes it "unlawful for an employer . . . to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA requires "but-for" causation; therefore, a plaintiff claiming age discrimination must establish by a preponderance of the evidence that his employer would not have taken the challenged employment action but for the plaintiff's age. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177-78 (2009).[4]

We evaluate [the Plaintiff's] claim under the three-step *McDonnell Douglas* framework. *McDonnell Douglas Corp.,* 411 U.S. at 802-05. Under this framework, the plaintiff must first establish a prima facie case of discrimination. *Riggs v. AirTran Airways, Inc.,* 497 F.3d 1108, 1114 (10th Cir. 2007). If the plaintiff does so, the employer "must articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* After that, "the burden shifts back to the employee to prove that the proffered legitimate reason was a pretext for discrimination." *Id.* at 1114-15.

At the pretext step, a plaintiff can withstand summary judgment by presenting evidence sufficient to call into question the truthfulness of the employer's reasons for the adverse action. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147-49 (2000). Pretext may be shown by "such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Rivera v. City & Cnty. of Denver,* 365 F.3d 912, 925 (10th Cir. 2004) (internal quotation marks omitted).

*Doyle v. The Nordam Grp., Inc.,* 492 Fed.Appx. 846, (10th Cir. 2012). *See also, Roberts v. Int'l Bus. Machines Corp.,* 2012 WL 4052515 at *5, Case No. 11-CV-040 JHP-JPC [Doc. 84 at p. 11-12] (N.D. Okla. 2012), aff'd at 733 F.3d 1306 (10th Cir. 2013).

Plaintiff has no direct evidence that Defendant terminated the employment of the Plaintiff based upon her age.  Here, the Defendant terminated the employment of Plaintiff Lay for repeated accounting, coding and conduct errors.   Facts at ¶¶ 13-54.    Therefore, in the absence of direct evidence of discrimination,[4] as in this case, the Court employs the traditional *McDonnell Douglas* burden shifting paradigm:

> In evaluating whether Plaintiff's proffered circumstantial evidence creates a dispute of material fact, the Court uses the three-step framework outlined in McDonnell Douglas Corp. v. Green. Under this framework, Plaintiff must initially establish a prima facie case of discrimination. If Plaintiff can present a prima facie case, Defendant then bears the burden of producing a legitimate non-discriminatory reason for any adverse employment action, in this case Plaintiff's termination. Should Defendant carry this burden, Plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by Defendant were not its true reasons, but were a pretext for discrimination and that age truly was the deciding factor. Throughout the three-step process, Plaintiff carries the full burden of persuasion to show that age was the factor that tipped the scales in favor of terminating him.

*Roberts,* 2012 WL 4052515 *at *5* (footnote references omitted).

In this case, Lay's ADEA claim is bottomed on a claim of disparate treatment. In an ADEA disparate treatment case, as this Court explained and the Tenth Circuit recognizes:

---

[4] "Direct evidence is evidence that, on its face, demonstrates than an adverse employment decision was reached for discriminatory reasons." *Roberts v. Int'l Bus. Machines Corp.*, 2012 WL 4052515, at p. 5.

Plaintiff must offer evidence that permits a reasonable inference that Plaintiff was "(1) within the [ADEA's] protected class of individuals 40 or older; (2) **performing satisfactory work**; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age."

*Roberts,* 2012 WL 4052515*,* at p. 7, [Roberts Doc. 84 pp. 15-16] (emphasis added); Zoutomou v. Copper, 550 Fed. Appx. 647, 651 (10th Cir. 2013).

Furthermore, Plaintiff Lay, faces an insuperable challenge in establishing discrimination because of the heightened causation standard. "The ADEA requires 'but-for' causation; therefore, Lay, in claiming age discrimination must establish by a preponderance of the evidence that [KFOC] would not have taken the challenged action [terminated Lay for repeated performance issues], but for Lay's' age." *Konzak v. Wells Fargo Bank, NA.*, 2012 WL 3104872, *3 (10th Cir.).   *See also, Thomas v. Berry Plastics Corp.,* 803 F.3d 510, 516, Fn. 8 (10th Cir. 2015)*; Doyle v. Nordam Group, Inc.,* 2010 WL 5141274, *4 (N.D. Okla. 2010) (affirmed on appeal at 492 Fed.Appx. 846, (10th Cir. 2012).

Applying these established principles to the undisputed facts, as addressed below, the Court will see that: (i) no prima facie case can be established; (ii) a legitimate business reason justified KFOC's termination of Lay; and (iii) no evidence supporting pretext exists. Summary judgment should therefore be granted to Defendant.

### Application of the Law to the Facts

For each of three separate reasons, the Lay ADEA claim must be dismissed.

1. **Lay Has Failed to Establish a Prima Facie Case of Age Discrimination.**

Under the facts set forth, Plaintiff cannot establish each of the two essential requirements for a prima facie case:  (i) that Plaintiff was satisfactorily performing her job and (ii) that but for Plaintiff's age, Defendant would not have terminated her employment.[5]

First, the undisputed evidence stablishes that a lengthy period of unsatisfactory work performance caused Defendant to terminate the employment of Lay.  *See, Lewis v. Twenty-First Century Bean Processing,* 2016 WL 66334, *2 (1st Cir. January 6, 2016) (affirming summary judgment that ADEA plaintiff failed to establish prima facie case when Plaintiff failed to provide evidence that his work was satisfactory).

 See,  work  performance  issues  at  Facts  at  ¶¶  13-54;  Exs.  5-37.   Lay  admitted  her accounting errors.   See admissions at Facts at ¶¶ 15, 16, 18, 21, 22, 31, 33, 43; Ex. 5 ("I have no excuse.");Ex. 6 ("Brain cramp."); Ex. 8 ("I goofed."); Ex. 11 ("Sorry about that."); Ex. 14 ("mia culpa"); Ex. 19 ("Included a previous invoice."); Ex. 20 ("I appreciate the reminder."); Ex. 24 ("It would have been me.").   Further, there is no evidence that Lay was treated less favorably than others outside of the respective protected classes.   (Facts at ¶¶ 55-61).

The  Court's  "role  is  to  prevent  unlawful … practices,  not  act  as  a  super  personnel department that second guesses employer's business judgments."  *Simms v. Oklahoma ex. Rel. Dep't. of Mental Health & Substance Abuse Srvs.*, 165 F. 3d. 1321, 1329 (10th Cir. 1999);

---

[5] Defendant does not dispute that Lay was within the ADEA's protected class of individuals when Defendant terminated Lay's employment in 2014.  Defendant hired Lay at the age of 50 in 2007.  Facts at ¶¶ 3-4.

Defendant does not dispute that Defendant terminated Lay's employment.

Defendant does not dispute that, as of June 23, 2014, Defendant employed Toni Wright, a female aged forty-three (43) to fill the position left vacant by Lay's employment termination.  Facts at ¶ 76.   However, as Judge Frizzell observed, the hiring of a younger person - in and of itself – does not establish intentional discrimination.   *Glenn v. City of Tulsa*, 2013 WL 1398991, *8 (N.D. Okla. April 5, 2015).

*Selenke v. Medical Imaging of Co.*, 248 F.3d 1249, 1261 (10th Cir., 2001).

Second Plaintiff Lay's ADEA claims fails because she cannot meet the ADEA burden. The ADEA requires that the Plaintiff establish that impermissible age discrimination was the "but-for" causation for the termination. *See, Konzak* at p. *3; *Doyle v. Nordam Group, Inc.,* 2010 WL 5141274, *2 (N.D. Okla. 2010) (affirmed on appeal at 492 Fed.Appx. 846, (10th Cir. 2012)*. The undisputed evidence as set forth above shows that the Defendant was merely implementing its expectations for proper accounting and coding and conduct and legitimately terminated Lay after a long period of dealing with Lay's performance issues.

### 2.   KFOC Had a Legitimate Business Reason to Terminate Lay

Assuming arguendo that Lay could establish a prima facie case of discrimination, KFOC bears only an "exceedingly light burden" of showing that KFOC terminated Lay for legitimate business reasons.   *Barnes v. Occidental Petroleum Corp.,* 761 F.Supp.2d 1285, 1292 (N.D. OK 2010)(quoting *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007).   "The defendant's burden is merely to articulate some proof [of a ] facially nondiscriminatory reason for the [action]; the defendant does not at his stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a non-discriminatory faction." *Wheeler v. Spirit Aerosystems*, 2015 WL 161292 (N.D. Okla. Jan. 20, 2015) (internal citation omitted).

KFOC has met this nominal burden of production showing that KFOC terminated Lay for legitimate business reasons.  As set forth above, Lay had a history of misconduct and discourtesy and repeated accounting and coding errors. Facts at ¶¶ 13-54.   Lay's history of performance issues pre-dates the employment of Turnbull.   Turnbull's employment under David Cox pre-dates Lay's termination by almost a year.   Facts at ¶¶ 62-66; Ex. 33.  Lay's history of errors pre-date Lay's termination.  Facts at ¶¶ 13-54.

Clearly, an employee's repeated misconduct and accounting performance issues constitute legitimate business reasons for terminating an employee, in this case, Lay.   In the case of *Doyle v. Nordam Grp., Inc.,* where an employee was passed over for promotion, rather than terminated, the Tenth Circuit Court noted that:    [] the fact that [the Plaintiff's] performance problems predate the controller vacancy undermine[d] any inference the negative reviews were age based and not an accurate reflection of his performance.  *Doyle v. The Nordam Grp., Inc.,* 492 Fed.Appx. 846, 851 (10th Cir. 2012).    Similarly in this case, the Plaintiff had a long history of poor performance long before the Plaintiff was terminated and negates the inference that Plaintiff Lay was disciplined and/or terminated only because of Lay's age.

### 3.  Lay Cannot Establish Pretext

Finally, Lay cannot raise a material fact that KFOC used Lay's failure to meet performance expectations for a joint interest billing accountant as a pretext for terminating Lay, who had a long history of errors and inappropriate conduct.   Facts at ¶¶ 13-53.

As the United States Court of Appeals for the Tenth Circuit put it in reviewing an ADEA claim under the pre-text prong of the McDonnell Douglas analysis:

> We do not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them.

*Konzak* at *5.   *See also, Barnes* at 1292.  As the Court notes, "the reason given was pretextual only if [the Plaintiff] shows that age discrimination provided a more likely explanation or that [the Defendant's] explanation was not credible."   *Hutchins v. Cessna Aircraft Co.,* 589 Fed. Appx 874, 876 (10th Cir. 2014).  Thus "evidence of pretext defeats summary judgment only if it could reasonably lead the trier of fact to infer a discriminatory motive." *Braun v. St. Pius Parish,* 509 Fed. Appx. 750, 754 (10th Cir. 2013) (internal citation omitted).

In the normal course of business, and as raised by other employees and/or working interest owners, KFOC reviewed Lay's accounting and coding work for accuracy.  Facts at ¶¶ 13-54.   Lay admitted accounting and coding errors.   Fact at ¶¶ 15, 16, 18, 21, 22, 31, 33, 43; Exs. 5, 6, 11, 19, 20, 24.

Having established that Lay was terminated for legitimate business reasons, Lay must meet Lay's burden of producing probative evidence of pretext to survive summary judgment. There is no such evidence. Lay simply cannot show that there are genuine issues of material fact establishing that Lay's termination following a history of accounting errors was pre-text for terminating Lay, who, as Lay admits, was "the baby",  because she was over forty.  Facts at ¶ 71; Ex. 1 (Lay at 145).

In light of the mechanical nature of the accounting transactions at issue, Lay has no evidence to suggest that the decision of Cox to terminate Lay for multiple accounting and coding

errors was a pre-text for age discrimination.[6]

## <u>CONCLUSION AND PRAYER FOR RELIEF</u>

There is no question that (i) Lay has presented no facts establishing disparate treatment and (ii) Lay would not have been terminated but for her age.  Thus Lay's ADEA claim fails.

KFOC requests that this Court grant summary judgment in its favor and dismiss the litigation pursued by Lay.

RESPECTFULLY SUBMITTED:

 /s/ Erica Anne Dorwart
Erica Anne Dorwart, OBA No. 18367
FREDERIC DORWART, LAWYERS
Old City Hall
124 East Fourth Street
Tulsa, Oklahoma 74103-5010
(918) 583-9922 - Office
(918) 583-8251 - Facsimile
**Email:** edorwart@fdlaw.com

---

[6] Lay may claim that an alleged comment by KFOC's controller Vinson raises a material issue of fact regarding pre-text for age discrimination.  Lay's argument would fail for the following separate and independent reasons: (i) Vinson did not terminate Lay; Cox did (Ex. 1 (Lay at 60); Ex. 2 (Affidavit of Cox)) and (ii) the alleged statement that Defendant needed younger employees was alleged to have been made by Vinson was alleged to have been made only 2-3 times over Lay's seven year history with KFOC and was thus a stray remark.  *See, Bell v. BOK*, Case 4:12-cv-00028-JHP-TLW Document 42 Filed in USDC ND/OK on 03/26/13 Page 9 of 10 Ex. 35. (noting:

> [E]ven at the summary judgment stage, "stray remarks," and "isolated or ambiguous comments are too abstract ... to support a finding of age discrimination." *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir.1994) (quotations and alteration omitted); *see also Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1140 (10th Cir.2000) (holding supervisor's comments that "at [employee's] age, it would be difficult to train for another position" or "difficult to find a new job" were too abstract to support an inference of age discrimination).

*See also, Doyle v. The Nordam Grp., Inc.,* 492 Fed.Appx. 846, 854, Fn. 5 (10th Cir. 2012).

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 25th day of March, 2016, the undersigned electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF Registrant:

Daniel E. Smolen
Lauren Lambright
David Bross
701 South Cincinnati Avenue
Tulsa, OK  74119
918-585-2667 (telephone)
918-585-2669 (fax)
danielsmolen@ssrok.com
laurenlambright@ssrok.com
davidbross@ssrok.com

/s/ Erica Anne Dorwart
Erica Anne Dorwart